UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - -
IVAN VALTCHEV,

                        Plaintiff,

       -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF EDUCATION, THE HIGH
SCHOOL OF GRAPHIC COMMUNICATION ARTS
IN NEW YORK CITY,

                        Defendants.
- - - - - - - - - - - - - - -

***AMENDED VERIFIED COMPLAINT AND JURY TRIAL DEMAND***

Index No.: 06-cv-07157

# Introduction

1. This is an action by Plaintiff, IVAN VALTCHEV, which seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, costs and attorney's fees against his f current employers Defendants THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF EDUCATION, and THE HIGH SCHOOL OF GRAPHIC COMMUNICATION ARTS IN NEW YORK CITY.

2. Plaintiff claims employment discrimination and retaliation by Defendant based on Plaintiff's gender, national origin, and/or age pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.; 42 U.S.C. § 1981 et seq.; the New York State Human Rights Laws, Exec. Law § 296; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; 42 U.S.C. § 1983, that Defendants engaged in retaliation in violation the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; and Defendants otherwise violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment the U.S. Constitution.

# Jurisdiction

3. Jurisdiction is specifically conferred on this Court under various federal statutes, to wit: U.S. Constitution, Amendment Fourteen, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 29 U.S.C. § 621; 28 U.S.C. §§ 1331, 1343; and the doctrine of supplemental jurisdiction pursuant to 29 U.S.C. § 1367.

4. The unlawful employment practices alleged below were committed primarily within the State of New York. All parties reside or do business within the Southern District of New York. Therefore, venue lies in the States District Court for the Southern District of New York under 28 U.S.C. § 1391(b).

# Facts of the Case

5. Plaintiff, IVAN VALTCHEV, is a male of Bulgarian descent who is sixty-three (63) years old. He resides in the County of New York, State of New York.

6. Upon information and belief, Defendant, THE CITY OF NEW YORK, is a municipal entity acting under the statutes, ordinances, regulations, customs, and usages of the State of New York.

7. Upon information and belief, Defendant, THE NEW YORK CITY DEPARTMENT OF EDUCATION ("DEPARTMENT OF EDUCATION"), is a subdivision of Defendant, THE CITY OF NEW YORK, and has offices located at 53 Chambers Street, New York, New York 10007. The DEPARTMENT OF EDUCATION manages Defendant, THE CITY OF NEW YORK's, public school system, including the hiring and retention of teachers.

8. Upon information and belief, Defendant, THE CITY HIGH SCHOOL OF GRAPHIC

COMMUNICATION ARTS IN NEW YORK CITY (hereinafter, "the School"), is a public high school within the system of Defendants, THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF EDUCATION.

9. On or about 1990, Plaintiff began working for the collective Defendants.

10. Throughout Plaintiff's professional career, he has earned professional diplomas in Administration Supervision from Fordham University's Graduate School of Education, as well as certifications which qualify him for promotion to supervisory positions at the School, including certification to serve as an Education Administrator, Supervisor of Special Education Programs, Assistant Principal in Special Education Schools, Principal of Special Education Schools, Assistant Principal in Fine Arts, Director of Art, Assistant Principal (Administration) in Day High Schools, and Assistant Principal of Special Education (Administration and Supervision) in Day High Schools.

11. Despite Plaintiff's numerous qualifications, he has not been granted any advancement opportunities, but rather has been subjected to ongoing gender (sexual harassment), age, and national origin discrimination, as well as retaliation for complaints of harassment and discrimination, which has placed Plaintiff in constant fear of his job, created a hostile work environment for Plaintiff, resulted in denial of supplemental assignments for Plaintiff, and has finally resulted in Plaintiff being removed from his current position and subject to 3020A disciplinary charges which may result in his termination.

12. Plaintiff experienced sexual harassment by being forced into an unwanted romantic relationship with his supervisor.

13. On or about 1992, Plaintiff's supervisor, Assistant Principal Barbara Weisent, began directing unwanted repeated romantic and sexual advances towards Plaintiff.

14. Plaintiff did not desire a romantic relationship with Ms. Weisent, but did acquiesce to such a relationship in fear of losing his job.

15. On or about August 8, 1994, Plaintiff terminated the relationship with Ms. Weisent.

16. Ms. Weisent continued to harass Plaintiff and threaten his job, until 2002 when Ms. Weisent ceased working at the School.

17. On our about September 29, 1999, due to Ms. Weisant's harassment and conduct, Plaintiff filed a formal complaint to the School alleging discrimination based on ethnicity, sexual harassment and retaliation by Ms. Weisent.

18. Upon information and belief, on or about November 1, 1999, said complaint was referred to the New York City Board of Education's Office of Equal Opportunity by the School, and was subsequently dismissed for lack of probably cause.

19. Upon information and belief, in retaliation for the September 29, 1999 Complaint, Ms. Weisent, on or about January 26, 2000, wrote a negative evaluation of Plaintiff and tried to relieve Plaintiff of his after-school duties in the weight room.

20. Ms. Weisent and other administrators of the School then retaliated against Plaintiff by removing a very positive peer observation, dated May 30, 2000, from his personal file, and conducting a surprise visit to his class room in on or about June 2000 to observe and generate a new observation report to replace the prior positive evaluation.

21. On or about March 3, 2000, Defendant, THE CITY OF NEW YORK, further retaliated against Plaintiff's complaint of sexual harassment by charging Plaintiff with engaging in a business or financial relationship with Ms. Weisent, based on prints and sculptures Ms. Weisent had demanded from Plaintiff in exchange for Plaintiff receiving his pay check on time.

22. Plaintiff also was denied advancement opportunities when supervisory positions, for which Plaintiff was qualified, became available at the School.

23. On or about June 2002, the Assistant Principal of Administration became available and Defendants failed to promote Plaintiff to the position.

24. On or about September 2002, the Assistant Principal of Special Education became available and Defendants appointed Dr. John Hartnett, instead of Plaintiff.

25. On or about November 2002, several years after Defendants had already denied his allegations of sexual harassment, Edward Miller of Department of Investigation of Defendant, CITY OF NEW YORK, subjected Plaintiff to a disciplinary investigation and reprimanded Plaintiff about his sexual relationship with Ms. Weisent.

26. During said interview, Plaintiff confirmed that he had acquiesced to a relationship with Ms. Weisent, and that Ms. Weisent had sexually harassed him.

27. On or about February 2003, Jerod Resnick was appointed Principal of the School.

28. On or about June, 2003, Plaintiff contacted the EEOC with a complaint of discrimination and sexual harassment.

29. Plaintiff has also suffered additional discrimination and retaliation by the conduct of those who have advanced in the place of Plaintiff.

30. Specifically, throughout Mr. Resnick and Dr. Hartnett's tenure at the School, they have discriminated against Plaintiff by discreet discriminatory acts and by creating a hostile work environment because of Plaintiff's age, national origin, and in retaliation for complaints filed by Plaintiff.

31. Upon information and belief, Dr. Hartnett evidenced bias against Plaintiff because of Plaintiff's national origin when on or about May, 2004 Plaintiff submitted an article from

the Washington Post about the restoration of a mural he had performed, in a building across from the White House.

32. In response to the submission of this article, Dr. Hartnett replied, in a discriminatory fashion to Plaintiff, by telling him that because of his national origin he posed a threat to the President of the U.S. and should not have been allowed to work on this project.

33. Upon information and belief, Mr. Resnick is biased against Plaintiff because of Plaintiff's age.

34. Upon information and belief, Plaintiff's union, the United Federation of Teachers (U.F.T.) is in possession and control of evidence of Mr. Resnick and other employees of Defendant, NEW YORK CITY DEPARTMENT OF EDUCATION's bias against teachers because of their age.

35. Upon information and belief, the United Federation of Teachers (U.F.T.) filed an age discrimination complaint with the EEOC against the Defendants, the New York City Department of Education.

36. Upon information and belief, U.F.T. specifically referenced discriminatory statements and actions by Mr. Resnick, effectively putting the Defendants, the New York City Department of Education, on notice of Mr. Resnick's behavior.

37. Beginning on or about the beginning of the 2003 school year, Plaintiff was denied numerous advancement opportunities by Dr. Hartnett and Mr. Resnick because of age and national origin discrimination, and in retaliation for his previous complaints of sexual harassment.

38. On or about August 2003, Plaintiff was denied the position of Assistant Principal of Pupil Services.

6

39. On or about the fall of 2003, Mr. Resnick physically confronted Plaintiff on more than one occassion by entering Plaintiff's classroom, and loudly shouting in Plaintiff's face, accusing him of such things as triggering a school alarm, or having a lesson plan on the blackboard.

40. On or about October 18, 2005, Plaintiff was denied the position of Assistant Principal of Special Education.

41. On or about December 9, 2005, Plaintiff was notified by Erin Anderson in the Department of Human Resources of Defendant, DEPARTMENT OF EDUCATION, that the hiring manager at the School did not choose Plaintiff for an interview for the Assistant Principal of Special Education position.

42. Upon information and belief, beyond denying Plaintiff advancement opportunities, Mr. Resnick and Dr. Hartnett have attempted to create a negative record for Plaintiff in an attempt to justify terminating his employment at the School.

43. On or about March 2004, Dr. Hartnett falsely implicated Plaintiff for theft, when a student, Andre Smith, lost his metro pass.

44. Dr. Hartnett ordered a police search of Plaintiff's belongings during Plaintiff's class, thus embarrassing Plaintiff in front of students.

45. On or about October 15, 2005, in an attempt to set Plaintiff up for failure, Dr. Hartnett and Mr. Resnick re-assigned Plaintiff to teach a math class, even though Plaintiff has neither the qualifications nor experience to teach math.

46. This assignment to teach math resulted in Plaintiff receiving a negative evaluation during the 2005-2006 school year.

47. On or about September 18, 2006, Plaintiff filed the instant action, *Pro Se*.

48. On or about October 4, 2006, Plaintiff filed a complaint against Defendants with EEOC.

49. On or about March 21, 2007, Plaintiff filed a formal complaint with State Education Department, alleging violations of state and federal laws in the education of students with Disabilities at the School.

50. On or about April 12, 2007 the State Education Department sent a letter to Plaintiff acknowledging receipt of Plaintiff's complaint on or about March 21, 2007, regarding improper actions by Dr. Resnick, including appointing Assistant Principals in Special Education without the proper qualifications.

51. Copies of the April 12, 2007 letter were also sent to Mr. Resnick and Dr. Hartnett

52. Soon after receipt of Plaintiff's most recent complaint, Mr. Resnick and Dr. Hartnett intensified their scrutiny of Plaintiff to further their effort to terminate Plaintiff's employment.

53. Since April 12, 2007 Plaintiff has received three letters of reprimand and three negative evaluations.

54. On or about April 13, 2007, Mr. Resnick and Dr. Hartnett arranged for a social worker to observe Plaintiff's class, in violation of school policies, and disrupting Plaintiff's class.

55. After initiating this disruption on or about April 13, 2007, on or about May 11, 2007, Dr. Hartnett found Plaintiff "guilty of unprofessional conduct" for his interactions with the social worker when she interrupted the class, and Dr. Hartnett threatened Plaintiff with further disciplinary action, and a 3020a hearing, leading to the termination of Plaintiff's teaching license.

56. Feeling threatened by Dr. Hartnett's "unprofessional conduct " determination, Plaintiff attempted rebut Dr. Hartnett's findings by asking students to write statements about his interactions with the social worker on April 13, 2007.

8

57. On or about May 30, 2007, Dr. Hartnett threatened a 3020a hearing, leading to the termination of his teaching license, for merely attempting to rebut his previous determination of "unprofessional conduct."

58. Mr Resnick and Dr. Hartnett also conducted a series of three observations of Plaintiff's class in the period between on or about May 3, 2007 and June 6, 2007, and then rated each of these observations as "unsatisfactory," and on two of these observations threatened a 3020a hearing.

59. In the last of these observation reports, Dr. Hartnett and Mr. Resnick exemplified their bias against Plaintiff because of his national origin, by noting Plaintiff's difficulty in spelling and mispronouncing certain English words, and holding that against Plaintiff in the evaluation process.

60. On or about July 2, 2007, Defendants prohibited Plaintiff from teaching summer school.

61. Because he was not permitted to teach summer school, Plaintiff suffered a pecuniary loss.

62. On or about August 23, 2007, Plaintiff was reassigned to a regional holding.

63. Upon information and belief, all conditions precedent to jurisdiction under 42 U.S.C. § 2000e-5, 42 U.S.C. § 1981; 29 U.S.C. § 621; 28 U.S.C. §§ 1331, 1343; and 29 U.S.C. § 1367 have been complied with and all conditions precedent to suit under applicable state and federal law have been met.

## For The First Cause of Action

64. Plaintiff incorporates as if realleged in paragraphs "1" through "63."

65. Plaintiff, a male of Bulgarian descent, is a member of a protected class protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

66. Defendant, by its agents, servants and/or employees, engaged in purposeful discrimination, condoned a hostile work environment and retaliated against Plaintiff based on his gender and national origin, by treating him differently in the terms and condition of employment, promotion and termination from other similarly situated workers who were not of his protected class.

67. By limiting, segregating and/or classifying its employees in a way which tended to deprive and/or deny employment opportunities to some employees, and against Plaintiff in particular, Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

68. Because Defendant's policy and practice of discrimination and retaliation had a detrimental impact on the discipline and retention of individuals of Plaintiff's protected class, and against plaintiff in particular, Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

69. Defendant's policy and practice of discrimination and retaliation has created a hostile work environment for Plaintiff.

70. As a result of the foregoing, Plaintiff IVAN VALTCHEV has suffered pecuniary loses in employment as well as severe emotional distress.

## For the Second Cause of Action

71. Plaintiff incorporates as if realleged in paragraphs "1" through "70."

72. Plaintiff, a male of Bulgarian descent, is a member of a protected class protected by 42 U.S.C. § 1981 et seq.

73. Defendant, by its agents, servants and/or employees, engaged in purposeful discrimination,

10

condoned a hostile work environment, and retaliated against plaintiff and others of his protected class based on his sex and national origin by treating them differently in the terms and condition of employment from other similarly situated workers who were not of their protected class.

74. By limiting, segregating and/or classifying its employees in a way which tended to deprive and/or deny any employment opportunities to some employees, and plaintiff in particular, Defendant has violated 42 U.S.C. § 1981 et seq.

75. Defendant's policy and practice of discrimination and retaliation had a detrimental impact on the discipline and retention of individuals of individuals of Plaintiff's protected class and Plaintiff in particular, thereby creating a hostile work environment, Defendant has violated 42 U.S.C. § 1981 et seq.

76. As a result of the foregoing, Plaintiff IVAN VALTCHEV has suffered pecuniary loses in employment as well as severe emotional distress.

## For the Third Cause of Action

77. Plaintiff incorporates as if realleged in paragraphs "1" through "76."

78. Plaintiff is a teacher who works with disabled students who are members of a protected class protected by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

79. Defendants, by retaliating against Plaintiff for complaining of discrimination its agents, did violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

80. Defendants' policy and practice of retaliation created an unlawful hostile work environment for Plaintiff

81. As a result of the foregoing, Plaintiff IVAN VALTCHEV has suffered pecuniary loses in

employment as well as severe emotional distress.

## For the Fourth Cause of Action

82. Plaintiff incorporates as if realleged in paragraphs "1" through "81."

83. Plaintiff, who is over sixty (60) years old, is a member of a protected class protected by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.

84. Defendant, by its agents, servants and/or employees, engaged in purposeful discrimination, condoned a hostile work environment, and retaliated against plaintiff and others of her protected class based on his age by treating them differently in the terms and condition of employment from other similarly situated workers who were not of their protected class.

85. By limiting, segregating and/or classifying its employees in a way which tended to deprive and/or deny any employment opportunities to some employees, and Plaintiff in particular, Defendant has violated the ADEA.

86. Because Defendant's policy and practice of discrimination and retaliation had a detrimental impact on the retention of individuals of Plaintiff's protected class, Defendant has violated the ADEA.

87. As a result of the foregoing, Plaintiff IVAN VALTCHEV has suffered pecuniary loses in employment as well as severe emotional distress.

## For the Fifth Cause of Action

88. Plaintiff incorporates as if realleged paragraphs "1" through 87."

89. Defendants have, by their agents, servants and/or employees operating under the color of

law, and exercising the authority of government officials, and by creating a custom and policy of discrimination against Plaintiff's protected classes, Defendants have violated 42 U.S.C. § 1983.

90. By otherwise violating Plaintiff's federal rights, Defendants have violated 42 U.S.C. § 1983.

91. As a result of the foregoing, Plaintiff, IVAN VALTCHEV, has suffered pecuniary losses in employment as well as severe emotional distress.

## For the Sixth Cause of Action

92. Plaintiff incorporates as if realleged paragraphs "1" through "91."

93. Defendant through their agents, servants and/or employees, by treating Plaintiff differently in the terms and conditions of employment and by retaliating against Plaintiff based on his gender, national origin, and age, have deprived Plaintiff of equal protection of the laws under the Fourteenth Amendment of the U.S. Constitution.

94. Defendants, by their agents, servants and/or employees operating under the color of law, and exercising the authority of government officials have violated Plaintiff's Due Process Rights in violation of the Fourteenth Amendment of the U.S. Constitution.

95. Defendants' policy and practice of violating Plaintiff's equal protection and due process rights have violated of the Fourteenth Amendment of the U.S. Constitution.

96. As a result of the foregoing, Plaintiff IVAN VALTCHEV, has suffered pecuniary loses in employment as well as severe emotional distress.

## For the Seventh Cause of Action

97. Plaintiff incorporates as if realleged paragraphs "1" through "96."

98. Plaintiff asks that this Court invoke jurisdiction over the herinafter state and local claims pursuant to the doctrine of supplemental jurisdiction.

99. Plaintiff, who is a male of Bulgarian descent, over the age of sixty (60) years of age, is a member of a class protected by the New York State Human Rights Law, Exec. Law § 296, and the New York City Administrative Code, N.Y.C. Admin. Code § 8-101 et seq.

100. Defendants, by their agents, servants and/or employees, engaged in purposeful discrimination and condoned a hostile work environment against Plaintiff based on his gender, age, and national origin by treating him differently in terms and condition of employment, promotion and termination from other similarly situated workers who were not of his protected class.

101. By limiting, segregating and/or classifying their employees in a way which tended to deprive and/or deny employment opportunities to some employees, and against Plaintiff in particular, Defendent has violated the New York State Human Rights Law and the New York City Administrative Code.

102. Because of Defendants' policy and practice of purposeful discrimination and condonation of a hostile work environment had a detrimental impact on the discipline and retention of individuals of Plaintiff's protected class, and against Plaintiff in particular, Defendant has violated the New York State Human Rights Law and the New York City Administrative Code.

103. Defendant's policy and practice of purposeful discrimination has created an unlawfully hostile work environment for Plaintiff.

104. As a result of the foregoing, Plaintiff IVAN VALTCHEV, has suffered pecuniary loses in employment as well as severe emotional distress.

**WHEREFORE,** Plaintiff IVAN VALTCHEVE prays that this Court enters judgment against Defendants THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF EDUCATION, and THE HIGH SCHOOL OF GRAPHIC COMMUNICATION ARTS IN NEW YORK CITY, as follows:

A. Find that the defendants have intentionally engaged in unlawful employment discrimination.

B. Enjoin defendants from engaging in these unlawful employment practices.

C. Order defendants to abide by their own policies and procedure.

D. Order defendants to pay plaintiff's attorney a reasonable fee in accordance with the law.

E. Order defendants to pay all cost in this action.

F. Award compensatory and punitive monetary damages,

G. Make plaintiff whole for defendants' unlawful conduct by applying pre-judgment and post-judgment interest.

H. Award to plaintiff such other and further relief as this Court may deem just, proper, and equitable.

# Jury Demand

Plaintiff demands a jury to try all claims triable by a jury.

Dated: Rosedale, New York
September 10, 2007

                                    STEWART LAW FIRM, LLP


                                    By:  Nadira S. Stewart
                                    Attorneys for Plaintiff
                                    133-40 Hook Creek Blvd.
                                    Rosedale, NY 11422
                                    (718) 527-9862