UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
IVAN VALTCHEV,

                                     Plaintiff,

         -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF EDUCATION, THE HIGH
SCHOOL OF GRAPHIC COMMUNICATION ARTS
IN NEW YORK CITY,

                                     Defendants.
------------------------------------------------------------------- x

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

06 Civ. 7157 (NRB)

        Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, defendants the City of New York ("City"), New York City Department of Education ("DOE"), this High School of Graphic Communication Arts[1] ("GCA") in New York City (collectively referred to herein as "defendants"), submit this Statement of Undisputed Material Facts as to which there are no genuine issues to be tried:

        1.      Plaintiff Ivan Valtchev ("plaintiff"), a teacher employed by DOE, brings this action pursuant to the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities At ("ADA") Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law §296, the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq.; and 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Equal Protection and Due Process

---

[1] The High School Of Graphic Communication Arts In New York City is not a suable entity. See N.Y. Educ. L. § 2590-g(2).

Clauses of the Fourteenth Amendment of the United States Constitution, alleging employment discrimination based upon age, gender and national origin, a hostile work environment and retaliation. See Exhibit "A."[2]

2. Specifically, plaintiff alleges that defendants subjected him to negative evaluations, intensified scrutiny, letters of reprimand, disciplinary charges, reassignment outside of the classroom and denial of advancement opportunities. Id. at ¶¶ 1-63. Plaintiff also asserts that defendants retaliated against him for complaints filed by plaintiff and created a hostile work environment. Plaintiff alleges that the current Principal of GCA, Jerod Resnick and Assistant Principal of Special Education John Hartnett discriminated against plaintiff because of his age, national origin and in retaliation for complaints filed by plaintiff. See Exhibit "A:" at ¶ 30.

A.   **Background**

3. Plaintiff is a male of Bulgarian descent who has a birth date of April 8, 1944. See Exhibit "A" at ¶ 5; see also Exhibit "B" 9: at 11-12.

4. Plaintiff began his employment with the New York City Department of Education in 1990 as a Substitute Teacher. See Exhibit "A" at ¶ 9; see also Exhibit "B" 59: at 24-25; 60: at 1-4.

5. Plaintiff is currently teaching under a Special Education license. See Exhibit "C"; see also Exhibit "B"61: at 1, 19-24, Exhibit "D" 7: at 17-22 and Exhibit "E" 41: at 13-20.

---

[2] Unless otherwise indicated, all exhibits and declarations cited to herein refer to those exhibits and declarations annexed to the Declaration of Camille D. Barnett, dated December 10, 2008, and submitted herewith.

6. In 1992, plaintiff interviewed for a Special Education teaching position with Barbara Weisent, the former AP of Special Education at GCA and began working at GCA in the fall of 1992. See Exhibit "B" 75: at 16-25; 76: at 8-14; 77: at 4-10; 84: at 12-17.

7. Plaintiff was advised that his employment was contingent on completing his Special Education license as soon as possible. See Exhibit "B" 83: at 17-25.

8. Plaintiff was certified as a Special Education teacher in 1995. See Exhibit "B" 96: at 3-14; 97: at 5-9.

9. The Principal of GCA is Jerod Resnick ('Principal Resnick") and the Assistant Principal of Special Education is John Hartnett ("AP Hartnett"). See Exhibit "A" at ¶¶ 24, 27; see also Exhibit "E" 5: at 8-10 and Exhibit "D" 6: at 3-6.

10. Mr. Resnick became Principal at GCA in February 2003 and AP Hartnett began working at GCA in September 2002. See Exhibit "A" at ¶ 27; see also Exhibit "E" 9: at 12; see also Exhibit "D" 10: at 22-25; 11: at 1-5.

11. Principal Resnick is 60 years of age. See Exhibit "E" 68: at 24.

**B. Plaintiff Complains About A "Personal" Relationship He Had With Former AP of Special Education At GCA, Barbara Weisent, Which Purportedly Ended In The 2001 School Year**

12. From 1992 to August 1994, plaintiff claims to have had a "romantic" and "intimate" relationship with the former Assistant Principal of Special Education at GCA, Barbara Weisent. See Exhibit "A" at ¶¶ 12-15; see also Exhibit "B" 141: at 19-22; 146: at 8-16.

13. Ms. Weisent left GCA at the end of the 2001 school year. See Exhibit "A" at ¶ 16; see also Exhibit "B" 146: at 17-20.

14. In 1999 or 2000, plaintiff complained to former Principal of GCA, Stanley Turetsky about alleged comments made during that time by former AP Weisent, that she wanted

plaintiff to look her in the eyes and wanted to spend weekend with plaintiff. See Exhibit "B" 130: at 14-25; 131: at 1-7.

15. Plaintiff also complained that former AP Weisent wanted him to turn over his life savings to her so that "she could make him a millionaire." See Exhibit "B" 131: at 11-13.

16. Plaintiff claims that former AP Weisent called him "stupid" and said "if you don't call me Dr. Weisent, I'll call you Ms. Valtchev." See Exhibit "B" 132: at 6-12.

17. Plaintiff acknowledged that former AP Weisent never gave him an "Unsatisfactory" observation report and former Principal Turetsky gave him "Satisfactory" annual evaluations. See Exhibit "B" 139: at 15-25.

18. When AP Weisent left GCA at the end of the 2001 school year, AP Hartnett became the Assistant Principal of Special Education at that time. See Exhibit "B" 148: at 11-16.

C. **Plaintiff's Background At GCA And The Special Education Umbrella License**

19. Prior to Principal Resnick's arrival at GCA, plaintiff had primarily been assigned as a Special Education Resource Room teacher. See Exhibit "E" 28: at 3-4.

20. Plaintiff believed that by 1999, he was assigned only Resource Room classes. See Exhibit "B" 102: at 13-15.

21. Principal Resnick testified that there are two types of Resource Room classes. See Exhibit "E" 28: at 10-11. The "Pull Out" Resource Room is when the teacher has eight Special Education students assigned for a specific period and those students would go to the teacher for assistance in various subject matters. See Exhibit "E" 28: at 11-17. Students do not get credit for this class and Principal Resnick testified that this type of Resource Room was not very effective because students felt "stigmatized" about being assigned to a Special Education Resource Room class and often did not want to go to such a class. See Exhibit "E" 28: at 17-22.

22. After approximately two years at the school and seeing that the pull out method was not working, Principal Resnick testified that he decided to change to "Push In" Resource Rooms where Special Education students attend their regular classes and a Special Education teacher goes to the class to assist the student. See Exhibit "E" 29: at 2-10; 30: at 19-25; 31: at 1-18; 36: at 14-22; see also Exhibit "D" 41: at 4-17, 44: at 3-7.

23. A Special Education teacher with DOE is authorized to teach English, Math, Science or Social Studies to DOE Special Education students. See Exhibit "E" 32: at 3-12; 34: at 2-8; see also Exhibit "D" 15: at 12-20. Plaintiff, a licensed and assigned Special Education teacher can therefore teach Special Education English, Math, Science or Social Studies. See Exhibit "E" 41: at 13-16, 18-20.

24. AP Hartnett testified that Special Education is considered an "umbrella license" and a Special Education teacher can teach any class where Special Education students are assigned. See Exhibit "D" 9: at 15-20. AP Hartnett testified that once GCA did away with Pull Out Resource Rooms, plaintiff had to be put into other classes. See Exhibit "E" 32: at 14-16.

25. Initially, plaintiff was assigned self-contained Math classes but when he received an "Unsatisfactory" annual evaluation for the 2005-2006 school year, plaintiff was given English and Social Studies classes. See Exhibit "E" 33: at 3-11; 38: at 14-19; see also Exhibit "D" 71: at 10-14.

26. Self-contained classes are where either twelve of fifteen Special Education students in a class are assigned to one Special Education teacher and paraprofessional. See Exhibit "E" 38: at 2-7.

27. AP Hartnett testified that plaintiff was never assigned to teach a class that was not a Special education class. See Exhibit "D" 10: at 22-25; 11: at 1-5.

### D. Plaintiff Exhibited Unsatisfactory Performance and Engaged In Misconduct While A Teacher At GCA.

28. On April 30, 2003, AP Hartnett conducted a classroom observation of plaintiff. See Exhibit "F." The lesson was found to be "Satisfactory", although AP Hartnett recommended that plaintiff should hold mini-lessons based on specific learning need to help build a sense of class and counter students' comments that the class was not interesting and had too much paperwork. Id. AP Hartnett noted plaintiff's class was akin to a Resource Room class which is no longer used at GCA. See Exhibit "D" 39: at 11-23.

29. Plaintiff did not believe that AP Hartnett's April 30, 2003 observation was discriminatory or hostile. See Exhibit "B" 174: at 2-9.

30. On December 21, 2004, AP Hartnett conducted a classroom observation of plaintiff. See Exhibit "G." The lesson was found to be "satisfactory" although AP Hartnett noted that plaintiff must ensure that all classroom activities were geared toward the Special Education students' IEP (Individual Education Plans) and that the class work helps remediate student learning disabilities. AP Hartnett suggested plaintiff could develop cooperative learning groups. Id.

31. Plaintiff did not believe that AP Hartnett's December 21, 2004 observation was discriminatory or hostile. See Exhibit "B" 176: at 8-13.

#### (a) The 2005-2006 School Year

32. On October 26, 2005, AP Hartnett and Principal Resnick conducted a classroom observation of plaintiff's self-contained Math class. The lesson was found to be "Unsatisfactory." See Exhibit "H."

33. In particular, AP Hartnett and Principal Resnick noted plaintiff's lesson was "highly inappropriate" for self-contained, special needs students, who are clearly deficient and are many years behind their peers in both academic functioning and abilities. Specifically, they found that the amount of subject matter taught was excessive, the pace of instruction was far too quick, and the methodology of teaching this subject matter did not meet their intensive learning needs. Plaintiff did not clearly define, nor give examples of many of the terms he introduced, plaintiff failed to assess students' individual success in learning the subject matter, plaintiff was advised to use student-centered activities, plaintiff failed to elicit information from students and assist them when they had difficulty, and most times, plaintiff simply looked at his lesson plan and copied it on the blackboard.

34. Plaintiff was reminded in the observation report to closely examine students' Individual Education Plans ("IEPs") to determine the exact nature of their learning needs and devise his lesson plans, and all of the activities within those plans, to meet their learning needs. It was noted that another Special Education teacher, Mr. Landress, was asked to work closely with plaintiff to improve the quality of instruction in his classroom. Additionally, both administrators were noted to be available to work with plaintiff. Id.

35. On December 1, 2005, AP Hartnett conducted a classroom observation of plaintiff's Mathematics class. See Exhibit "I." This lesson was found to be "Unsatisfactory."

36. In the observation report, AP Hartnett found plaintiff's lesson to be "inappropriate" for students who, due to their deficient academic abilities, have been placed in a self-contained Mathematics class. AP Hartnett found that pace of plaintiff's lesson continued to be "too fast, the amount of material taught" was "excessive" and the teaching methodology continued not to meet students' learning needs. Plaintiff was reminded that he must determine

each student's specific learning needs and prepare his lesson plans, and all of the activities in those plans, to meet their learning needs. Plaintiff was advised to use "student-centered" activities that will help him to more accurately evaluate student success or lack thereof with the lesson's objectives. Plaintiff's pedagogy, including board work and questioning techniques were found to be confusing and ineffective and AP Hartnett noted that " …you continue to move forward with the lesson, when it was obvious that the students are having difficulty and need more assistance and instruction before moving on." Plaintiff was urged to continue to work with Mr. Landress and Mr. Piton, the Assistant Principal of Mathematics to improve his pedagogical skills. Id.

37. On April 11, 2006, AP Judith Silverman, Assistant Principal of Science conducted a classroom observation of Mathematics class. See Exhibit "J." The lesson was found to be "Unsatisfactory."

38. AP Silverman noted that plaintiff must plan his lessons so that the subject matter being taught was appropriate for special needs students and that plaintiff's lesson was not at the appropriate level for special needs students. She also noted that plaintiff's lesson was "teacher-dominated", rather than letting students work on a problem and presents it. The observation report noted it was important for plaintiff to assess student understanding and must individualize instruction to maximize learning. Plaintiff was again reminded to utilize resources available in the Special Education department as well as work with Mr. Landress and Mr. Piton. Id.

39. For the 2005-2006 school year plaintiff received an Annual Professional Performance Review and Report of "Unsatisfactory." See Exhibit "K."

40.  The areas where plaintiff was found to be "Unsatisfactory" include planning and preparation of work, skill in adapting instruction to individual needs and capacities, effective use of appropriate methods and techniques, skill in making class lessons interesting to students, extent of pupil participation in the class and school program and evidence of pupil growth in knowledge, skills, appreciations and attitude. Id.

**(b) 2006-2007 School Year**

41.  On October 25, 2006, AP Hartnett conducted a classroom observation of plaintiff's self-contained English 3 class. See Exhibit "L." The lesson was found to be "Satisfactory", although AP Hartnett recommended that plaintiff's lesson plan should include classroom activities that provide for bell-to-bell instructions. Id.

42.  Plaintiff did not believe that this observation was discriminatory or hostile. See Exhibit "B" 174: at 1-19.

43.  On January 29, 2007, plaintiff entered his Union's Peer Intervention Program. See Exhibit "M"

44.  The Peer Intervention Program is an assistance program for teachers who have received "Unsatisfactory" evaluations. See Exhibit "B" 69: at 11-16.

45.  Principal Resnick testified that the program works as follows: A Peer Intervenor was selected to work directly with plaintiff in his classroom and a program was developed tailored to plaintiff's specific needs and designed to improve his classroom competence. Pursuant to the collective bargaining agreement, for a three month period from January 29, 2007, supervisors were not to evaluate or observe plaintiff, although all other supervisory responsibilities were unaffected. Id.

46. On April 18, 2007, AP Hartnett met with plaintiff and his union representative to discuss an incident that occurred between plaintiff and School Social Worker, Leslie Sklar. See Exhibit "N."

47. On April 13th Principal Resnick received a complaint from Ms. Sklar that when she reported to plaintiff's classroom during third period in order to observe one of her students on whom plaintiff had sent her a written referral for misbehavior the day before. The complaint alleged plaintiff treated her in an "unprofessional manner" by publicly, in a loud and rude manner, refusing her request to remain in his classroom to observe the student. See Exhibit "N"; see also Exhibit "E" 85: at 11-25; 86: at 1-14.

48. AP Hartnett interviewed Ms. Sklar and Mr. Torres, a paraprofessional who was in plaintiff's class at the time, both of whom denied plaintiff's statements. Mr. Torres and Ms. Sklar noted that plaintiff "loudly" and "rudely" ordered Ms. Sklar to leave the room. A couple students in the class also confirmed the foregoing. AP Hartnett's investigation revealed that plaintiff had engaged in "unprofessional conduct." Plaintiff was advised that in the future, such conversations were to be conducted in private, outside the presence of students and other staff members. Id.

49. On May 3, 2007, Principal Resnick and AP Hartnett conducted a classroom observation of plaintiff's self-contained English 4 class. See Exhibit "O" Plaintiff's lesson was found to be "Unsatisfactory."

50. In the observation report, it was noted that out of the four students in the class spent mote of the lesson uninvolved in the instruction and uninterested in what was being taught and plaintiff was advised to develop classroom management techniques and instructional strategies that actively engaged all students and maintained their interest. The observers found

no assessment for student understanding, no discussion, no grouping for sharing and plaintiff gave confusing instructions so that one student commented, "translate to English." Again, the report noted that too many portions of the lesson when students were not engaged in active learning and plaintiff was advised that he must develop lesson plans that provide for bell-to-bell instruction as well as alternate instructional activities to be used. It was noted that it was of the "utmost urgency" that plaintiff improve his classroom instruction and facilitate student leaning, and implement listed recommendations. Id.

51.     On May 18, 2007, AP Lantigua Sime, Assistant Principal of Art and Music conducted a classroom observation of plaintiff's English Language Arts class. See Exhibit "___." Plaintiff's lesson was found to be "Unsatisfactory."

52.     According to AP Sime, plaintiff was advised during the pre-observation conference of the necessary components of a satisfactory lesson.

53.     During the lesson, AP Sime observed that plaintiff failed to properly use cooperative learning, failed to model what is expected or give specific instructions. AP Sime also observed that plaintiff's lesson contained misspelled words, mispronunciations and defined words incorrectly. Plaintiff was again advised that he should review students' IEPs to determine each student's disabilities and be able to teach students at their own level. AP Sime observed the same weaknesses and issues in plaintiff's lesson and was reminded to incorporate the strategies and recommendations contained in his observation reports. Id.

54.     On May 22, 2007, plaintiff, AP Hartnett and plaintiff's union representative had a meeting concerning an incident that took place in plaintiff's classroom on May 14, 2007. See Exhibit "Q."

55. AP Hartnett noted in a letter concerning this meeting that plaintiff acknowledged that he prepared a type-written document entitled "Statement" for students to sign. This was despite the existence of a DOE form entitled "written statement form" which enables students to write their own statements. AP Hartnett investigated the matter and found plaintiff had engaged in "unprofessional conduct.' Specifically, AP Hartnett noted that it was "unprofessional and coercive" for plaintiff to use a prepared statement with his students and ask them to sign it.

56. Plaintiff was advised that if he required students to write statements in the future, that he first speak to his department supervisor and follow proper procedures. Id.

57. On June 6, 2007, AP Hartnett and Principal Resnick observed plaintiff's self-contained History 4 class. See Exhibit "R." This lesson was found to be "Unsatisfactory."

58. In particular, the observation report noted that plaintiff failed to provide a lesson plan until half of the way through the lesson. When presented, plaintiff's plan was found to be "inappropriate and poorly developed." AP Hartnett and Principal Resnick observed that plaintiff failed to conduct a "proper assessment" of the students' knowledge, he failed to use a cooperative learning activity, failed to offer students any information or assistance that they might use to succeed in their new York State Global History examinations, nor did plaintiff accurately assess their learning during the lesson. AP Hartnett and Principal Resnick also found that plaintiff gave students wrong information, made mistakes in grammar, spelling and pronunciation. Plaintiff was advised that not making such mistakes was said to be "critical" in a self-contained class where the students have learning disabilities and severe English language deficits. Id.

59. On June 6, 2007 AP Hartnett met with plaintiff and plaintiff's union representative to discuss an incident of unprofessional conduct by plaintiff. See Exhibit "S." On May 23rd, AP Hartnett went to the Special Education office and observed plaintiff having a telephone conversation. AP Hartnett observed that plaintiff left his fifth period class with the assigned paraprofessional in order to have this telephone conversation. AP Hartnett noted that there was no viable reason why plaintiff had to leave his classroom during the middle of an instructional period, to make a phone call that was not of an "urgent" nature. As plaintiff did not have a schedule assignment during the fourth or sixth period, he had ample time either before or after his fifth period class to confirm the meeting with AP Sime. Plaintiff was advised that in the future he should contact other staff members during non-teaching periods and if anything of an urgent nature arose, he should contact the department chairperson so that adequate coverage could be arranged. Id.

60. For the 2006-2007 school year, plaintiff received an "Unsatisfactory" rating on his Annual Professional Review and Report. See Exhibit "T." This rating was based in part on "Unsatisfactory" classroom observations of May 5, 2007, May 18, 2007 and June 7, 2007, as well as letters to file on May 11, 2007, May 3, 2007 and June 6, 2007. The areas where plaintiff was found to be "Unsatisfactory" included planning and preparation of work, skill in adapting instruction to individual needs and capacities, effective use of appropriate methods and techniques, skill in making class lessons interesting to students, extent of pupil participation in the class and school program and evidence of pupil growth in knowledge, skills, appreciations and attitude. Id.

61. Plaintiff received "Unsatisfactory" ratings in his lessons in English, Social Studies and Math by five different supervisors. See Exhibit "E" 51: at 13-16.

### (c) Disciplinary Charges

62. As of August 30, 2007, plaintiff was reassigned to the DOE's regional offices, pending disciplinary charges concerning his unsatisfactory work performance and misconduct. See Exhibit "A" at ¶ 62; see also Exhibit "B" 227: at 6-8, 23-25; 228: at 1-6.

63. While assigned to the regional office, plaintiff receives his full salary. See Exhibit "B" 227: at 15-22. Plaintiff remains assigned to the regional office pending the adjudication of his disciplinary charges. See Exhibit "B" 228: at 9-11, 18-20. Plaintiff is receiving union representation for the disciplinary proceedings. See Exhibit "B" 230: at 2-5.

64. Pursuant to Education Law §3020-a, disciplinary charges and specifications were served on plaintiff concerning his incompetent and inefficient service, insubordination, conduct unbecoming his position or conduct prejudicial to the good order, efficiency or discipline of the services, and neglect of duty, for the 2005-2006 and 2006-2007 school years. See Exhibit "B" 228: at 2-7; see also Exhibit "U."

### E. Plaintiff's Claim That He Was Not Given Supervisory Positions

65. Plaintiff claims that in 2002, the AP of Special Education at GCA became available. The position was given to John Hartnett. See Exhibit "A" at ¶¶ 23-24; see also Exhibit "V."

66. Plaintiff also claims that on or about August 2003, he was denied the position of Assistant Principal of Pupil Services and that on or about October 18, 2005, plaintiff was denied the permanent Assistant Principal position of Special Education. See Exhibit "A" at ¶¶ 38, 40; see also Exhibit "W" and Exhibit "X."

67. Principal Resnick testified about the selection process utilized by GCA at the time. At GCA, the process for the selection of candidates for supervisory positions requires that a school leadership Team or C-30 Committee, consisting of students, parents, teachers and

various union representatives, to convene and select the best candidates to interview for supervisory positions. See Exhibit "Y"; see also Exhibit "E" 16: at 5-25

68. For the above-referenced supervisory positions, the C-30 committee did not select plaintiff amongst the candidates it considered best to be interviewed for the positions. See Exhibit "V", Exhibit "W" and Exhibit "X."

### F. Plaintiff's Complaints

#### (a) Plaintiff's 1999 Internal Complaint To DOE's Office Of Equal Employment

32. In 1999, prior to Principal Resnick and AP Hartnett's arrival at GCA, plaintiff submitted a complaint of race discrimination, sexual harassment and retaliation to DOE's Office of Equal Opportunity. See Exhibit "Z."

33. However, plaintiff advised in a letter dated, November 5, 1999 that he wished to waive his right to assistance from this office and would file a case in civil court. See Exhibit "AA."

#### (b) Plaintiff's Complaint To The New York State Education Department

69. Via correspondence dated, March 9, 2007, plaintiff made a complaint to the New York State Education Department concerning what plaintiff described as "an entire high school running under criminally/illegally appointed supervisors as the High School of Graphic Communication Arts." See Exhibit "BB."

70. In particular, plaintiff complained of an alleged stabbing, that assistant principals appointed as directors of academies at the school, do not hold supervisory fine arts licenses and that supervisory and teacher positions are given to unlicensed unprofessional individuals. Id.

71. Further, plaintiff complained about the reduction of Resource Rooms for Special Education students, his assignment teaching Math and that he as a tenured Special Education teacher was forced to "teach a no license area subject" which he described as a violation of the State and Federal laws governing instruction in high school. Plaintiff mentioned Principal Resnick's "stricter standards for evaluation." Id.

72. The New York State Education Department investigated plaintiff's complaint and was "unable to find any violation of federal or state special education laws and regulations during the course of this investigation." See Exhibit "CC." In particular, the school Region established that all supervisors and teachers of special education at GCA, including plaintiff, were appropriately certified or licenses and that sampled students were receiving mandated placements. Id.

### (c) Plaintiff's Complaint To The United States Equal Employment Opportunity Commission

73. On October 4, 2006, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). See Exhibit "DD." Plaintiff alleged race, sex, national origin, age and retaliation discrimination. Plaintiff specifically acknowledged that his complaint addressed issues beyond the last 300 days, some older than five years. Id.

74. Based on plaintiff's request and for administrative convenience, the EEOC issued a Right to Sue Letter on November 17, 2006. See Exhibit "EE."

### G. Plaintiff's Federal Lawsuit

75. On or about September 18, 2006, plaintiff instituted the instant federal action by filing a Verified Complaint. See Exhibit "FF." On or about September 10, 2007, plaintiff served an Amended Verified Complaint. See Exhibit "A."

76. Plaintiff claims that he was retaliated against because of a disability, in violation of the ADA. See Exhibit "A" at ¶ 2; see also Exhibit "B" 245: at 13-15. Plaintiff testified that he has "difficulty walking around too much" and standing up and experiences "strong testicular pain." See Exhibit "B" 245: at 16-20. Plaintiff also claims that he receives "psychiatric treatment" and has been diagnosed with "anxiety, stress." See Exhibit "B" 246: at 2-5; 247: 5-8. Plaintiff claims that in 2004 he told AP Hartnett that he need to be on the "same floor" but acknowledged that he never filled out a request for accommodation. See Exhibit "B" 251: 8-24. In the fall of 2004, plaintiff was given the "same floor." See Exhibit "B" 254: at 21-25; 255: at 1-3

77. Plaintiff claims that Principal Resnick "loudly shouted" at him and accused him of such things as pulling a fire alarm or having a lesson plan on the blackboard. See Exhibit "A" at ¶ 39. Plaintiff also claims that Dr. Hartnett falsely implicated him of theft when a student lost a metro pass and ordered a police search of plaintiff's things. Plaintiff testified that his briefcase was searched and that also the students' bags were searched. See Exhibit "B" 169: at 20-25; 170: at 1-7. Plaintiff asserts that he has been subjected to a hostile work environment by being given "poor" assignments, by being rated "Unsatisfactory" and by teaching outside of his license. See Exhibit "B" 203: at 1-6.

78. Plaintiff claims that AP Hartnett falsely implicated him for theft when a student lost his Metro Card and ordered the police to search plaintiff's belongings. See Exhibit "A" at ¶¶ 43-44; see also Exhibit "B" 167: at 23-25; 168: at 1-25; 169: at 1-25; 170: at 1-7. Plaintiff testified and claims that the AP of Special Education purportedly made a statement in May 2004 after plaintiff showed him an article from the Washington Post about the restoration of a mural in a building across the street from the White House, that because of plaintiff's national

origin, he posed a threat to the President of the United States and should not have been allowed to work on the project. See Exhibit "A" at ¶¶ 31-32. Additionally, plaintiff claims that Mr. Hartnett sexually harassed him by allegedly stating and gesturing that plaintiff is going to be "ridden like a horse." See Exhibit "B" 264: at 12-17. Plaintiff fails to attribute any statement to Principal Resnick concerning plaintiff's protected characteristics.

Dated:  New York, New York
        December 10, 2008

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the
                     City of New York
                    Attorney for Defendants
                    100 Church Street
                    New York, New York 10007
                    (212) 788-8685
                    cbarnett@law.nyc.gov

                    By: _____
                        Camille D. Barnett
                        Assistant Corporation Counsel